## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

**ILARIA G.,**[1]

       **Plaintiff,**

                                      **Case No. 1:22-cv-1366**

    **v.**                                **Magistrate Judge Norah McCann King**

**CAROLYN COLVIN,**
**Acting Commissioner of Social Security,**

       **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Ilaria G. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On October 12, 2013, Plaintiff filed her application for benefits, alleging that she has been disabled since June 3, 2013. R. 84, 103, 195–96. The application was denied initially and upon reconsideration. R. 106–10, 112–17. Plaintiff sought a *de novo* hearing before an

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Carolyn Colvin, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

administrative law judge ("ALJ"). R. 118–19. ALJ Timothy Stewart held a hearing on June 8, 2016, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 31–83. In a decision dated July 11, 2016, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 3, 2016, Plaintiff's alleged disability onset date, through the date of that decision. R. 15–25 ("the 2016 decision"). Plaintiff timely filed an appeal from that decision to this Court pursuant to 42 U.S.C. § 405(g). R. 617–21. On January 3, 2019, this Court reversed the 2016 decision and remanded the matter for further proceedings. R. 694, 700.

On remand, the Appeals Council, noting that Plaintiff had filed a subsequent claim for Title II disability benefits on August 19, 2017, directed as follows:

> The Appeals Council's action with respect to the current electronic claim renders the subsequent claim duplicate. Therefore, the Administrative Law Judge will consolidate the claims files, associate the evidence, and issue a new decision on the consolidated claims (20 CFR 404.952 and HALLEX 1-1-10-10), On remand, the Administrative Law Judge should apply the prior rules [applicable to cases filed before March 27, 2017] to the consolidated case pursuant to HALLEX I-5-3-30.

R. 703. On April 14, 2021, ALJ Dory Sutker held a hearing at which Plaintiff, who was represented by counsel, testified with the assistance of an interpreter. R. 2251–78.[3] On August 12, 2021, the ALJ held a second hearing at which Plaintiff, again represented by counsel, again testified, as did a vocational expert. R. 2221–50. After Plaintiff objected to that vocational expert testimony, R. 1277–78, the ALJ held a third hearing on December 16, 2021, at which Plaintiff, who was again represented by counsel, again testified with the assistance of an interpreter; a different vocational expert also testified. R. 561–92. In a decision dated January 19, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act

---

[3] On January 10, 2020, ALJ Trina Moore issued a Notice of Dismissal for failure to appear at a hearing scheduled for December 16, 2019, R. 708–09, but the ALJ subsequently vacated that dismissal order for good cause shown. R. 710–11.

through the date of that decision. R. 517–37 (the "2022 decision"). Plaintiff filed this appeal

pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 29, 2022, Plaintiff consented to disposition

of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of

the Federal Rules of Civil Procedure. ECF No. 2.[4] On May 3, 2022, the case was reassigned to

the undersigned. ECF No. 5. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted);

*see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations

omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and

quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091,

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see*

*K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

**B.    Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of

Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    THE 2022 DECISION AND APPELLATE ISSUES

Plaintiff was 49 years old on December 31, 2017, *i.e.*, the date on which she was last insured for disability benefits. R. 520, 535. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between June 3, 2013, her alleged disability onset date, and her date last insured. R. 520.

At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spines, fibromyalgia, and depressive disorder were severe impairments. *Id*. The ALJ also found that Plaintiff's labyrinthine dysfunction was not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of

impairments that met or medically equaled the severity of any Listing. R. 520–23.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 523–34. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a warehouse worker, packer, and industrial truck operator. R. 534.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, jobs as an assembler, a laborer, and a price marker—existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 535–36. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 12, 2013, her alleged disability onset date, through December 31, 2017, the date on which she was last insured. R. 536–37.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 23; *Plaintiff's Reply Brief*, ECF No. 29. The Acting Commissioner takes the position that the decision should be affirmed in its entirety because the 2022 decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 26.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Vedat Obuz, M.D.

On March 14, 2013, Vedat Obuz, M.D., Plaintiff's treating physician, wrote a letter addressed "To Whom It May Concern," advising that Plaintiff "has chronic back pain, neck pain and Rheumatoid Arthritis. She can not lift over 20 lbs. Please help her." R. 318 ("March 2013

opinion").

On January 2, 2014, Dr. Obuz completed a three-page, check-the-box, and fill-in-the-blank form entitled, "General Medical Report." R. 312–14 ("January 2014 opinion"). Dr. Obuz indicated that he had examined Plaintiff on a monthly basis beginning on March 8, 2012, and most recently on March 14, 2013. R. 312. He stated that Plaintiff had a history of severe fibromyalgia and rheumatoid arthritis and a diagnosis of fibromyalgia. *Id*. Dr. Obuz opined that Plaintiff could lift and carry up to 10 to 15 pounds, could stand and/or walk less than 2 hours a day, and could sit less than 6 hours a day. R. 313. Asked whether Plaintiff had limitations in her ability to push and/or pull (including hand and foot controls) or other limitations (such as handling objects, hearing, speaking, and traveling), Dr. Obuz checked the box marked "Limited (please specify below[.]" *Id*. However, Dr. Obuz specified neither what these limitations were nor the extent of such limitations. *Id*.

On December 5, 2017, Dr. Obuz completed a two-page, check-the-box, and fill-in-the-blank form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)[.]" R. 350–51 ("December 2017 opinion"), 1549–50 (duplicate).[5] According to Dr. Obuz, Plaintiff could sit for a total of 0 to 2 hours in an 8-hour workday and could stand/walk for

---

[5] The Court Transcript Index includes two separate exhibits identifying this opinion by Dr. Obuz as two separate opinions with different dates, Exhibit 6F, R. 350–51, reflecting a date in the Index of "12/05/13," and Exhibit 39F, R. 1549–50, reflecting a date in the Index of "12/05/2017." Plaintiff similarly appears to take the position that these exhibits contain two different opinions dated December 2013 and December 2017. *Plaintiff's Brief*, ECF No. 23, pp. 6, 16, 23–24. However, these exhibits are, in fact, identical. *Compare* R. 350–51 *with* R. 1549–50. Although the handwritten date on both copies of the opinion is difficult to decipher, the ALJ interpreted the date as December 2017. R. 533. The Acting Commissioner agrees that Exhibits 6F and 39F are identical but contends that the ALJ erred in finding that the opinion was dated 2017; she insists that the date of this opinion is really 2013. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 26, pp. 4 n.3, 23 n.9. The Court cannot conclude that the ALJ erred in finding that the opinion was dated 2017 and not 2013. *See* R. 350–51, 1549–50.

a total of 1 hour in an 8-hour workday. R. 350. Plaintiff must alternate between sitting and standing every 20 minutes in order to relieve her pain or discomfort. According to Dr. Obuz, Plaintiff could occasionally (meaning up to one-third—6% to 33%—of an 8-hour workday) lift and carry less than 10 pounds and could rarely (meaning approximately 1% to 5% of an 8-hour workday) lift and carry 10 pounds; she could occasionally use her upper and lower extremities for pushing and/or pulling; and could rarely climb stairs/ramps/ladders/ropes/scaffolds, bend/stoop, balance, kneel, or crouch. *Id*. Plaintiff could occasionally reach in all directions (including overhead), but could rarely handle, finger, or feel. R. 351. Asked if Plaintiff had visual/communicative limitations, Dr. Obuz checked the box marked "N/A." *Id*. Dr. Obuz denied that Plaintiff had any environmental limitations. *Id*. Dr. Obuz opined that Plaintiff needed to take unscheduled breaks every 20 minutes for an unspecified amount of time. *Id*. He further opined that Plaintiff would likely be absent from work 3 or more days per month due to her impairments and/or treatment. *Id*.

B.    **State Agency Medical Consultants**

Harpreet Khurana, M.D., conducted an initial review of Plaintiff's medical record on behalf of the state agency on December 24, 2013. R. 85–93 (Exhibit 2A). Dr. Khurana specifically considered the medical evidence as it appeared in the record at that time, which included, among other things, function reports, treatment records, imaging reports of the cervical and lumbar spines, and Plaintiff's subjective reports. R. 85–93. Dr. Khurana found that Plaintiff's degenerative disc disease of the back and fibromyalgia were severe. R. 88. Dr. Khurana opined, *inter alia*, that Plaintiff was capable of light exertional work. R. 92. Dr. Khurana further opined that Plaintiff could frequently climb ramps/stairs, balance, stoop, and kneel and could occasionally crouch and crawl, but could never climb ladders/ropes/scaffolds

and must avoid even moderate exposure to hazards. R. 90–91. Asked to further explain these

postural and environmental limitations, Dr. Khurana referred to his narrative under the heading,

"RFC — Additional Explanation," as follows:

> Claimant is a 45 year old woman alleging disability.
>
> Allegations Back problem, fibromyalgia, arthritis
>
> AOD=6/3/13
>
> Review of ME in file reveals:
>
> MRI lumbar spine 1/13 disc herniation with annular tear L5-S1, disc bulge L4-5, straightening of normal lordosis.
>
> MD note 5/13 c/o joint pain, back pain.
> Exam Normal gait Reduced C and L ROM, tenderness C/T/L spine. Reduced ROM shoulders, hips.
>
> Crepitus in knees.
>
> MRI C spine 8/13 C5-6 disc herniation narrowing left foramen, straightening of normal lordosis.
>
> MD note 10/13 c/o joint and muscle pain, diffuse body pain.
> Exam Motor /sensory intact. Full ROM spine, shoulders, UE and LE joints. Tender points 18/18 noted.
> Diagnoses include fibromyalgia. Started on Neurontin.
>
> Based on ME in file, PRFC is proposed.
> AOD=MOD.

R. 91.

Mary McLarnon, M.D., reviewed Plaintiff's medical record upon reconsideration for the

state agency on January 28, 2014. R. 94–102 (Exhibit 3A). Like Dr. Khurana, Dr. McLarnon

found that Plaintiff's degenerative disc disease of the back and fibromyalgia were severe. R. 97–

98. Dr. McLarnon also agreed with Dr. Khurana that Plaintiff was able to perform light

exertional work and could frequently climb ramps/stairs, balance, stoop, and kneel and could

occasionally crouch and crawl, but could never climb ladders/ropes/scaffolds and must avoid

even moderate exposure to hazards. R. 99–101. In explaining these postural and environmental

limitations, Dr. McLarnon referred to her narrative statement under the heading, "RFC —

Additional Explanation." R. 99–100. Dr. McLarnon repeated Dr. Khurana's narrative and further

noted that there had been no change since the initial review; she specifically noted Dr. Obuz's

January 2014 opinion:

> APPEAL no change
> Additional MER
> 01/14 Dr Obuz recommends severe exertional limitations; last OV 06/13 - taking
> Ultracet, ketamine with gabapentin topical solution; Valium. PE normal x diffuse
> tenderness. ESR and CRP normal; positive ANA. Severe FBM was diagnosed.
> File reviewed.

R. 100.

Following the earlier remand by this Court, Mohamed Abbassi, M.D., conducted an

initial review of Plaintiff's medical record on behalf of the state agency on November 22, 2017.

R. 622–35 (Exhibit 8A). Dr. Abbassi opined, *inter alia*, that Plaintiff could perform light

exertional work and could occasionally perform all postural maneuvers. R. 630, 634. In

explaining these limitations, Dr. Abbassi stated that Plaintiff "is reasonably restricted by pain,

the RFC is based on her general multifocal physical c[]omplaints r[a]ther than p[re]cise

diagnosis." R. 630.

Arthur Pirone, M.D.,[6] reviewed Plaintiff's medical record upon reconsideration for the

state agency on February 27, 2018. R. 637–48 (Exhibit 10A). Among other things, Dr. Pirone

agreed with Dr. Abbassi that Plaintiff could perform light exertional work and could occasionally

perform all postural maneuvers. R. 645–47. Dr. Pirone reaffirmed the physical RFC opined by

---

[6] This consultant's credentials appear later in the record. R. 649.

Dr. Abbassi, stating that "[a]ll MER is reviewed. Limitations per RFC 1 are deemed to be appropriate and are affirmed as written." R. 643.

### C.    State Agency Psychological Consultants

Consultant Helen Feldman[7] conducted an initial review of Plaintiff's medical record on behalf of the state agency on December 8, 2017. R. 622–35 (Exhibit 8A). Consultant Feldman found that, among other things, Plaintiff's depressive disorder was severe and that Plaintiff had moderate limitations in all paragraph B criteria except for a mild limitation in interacting with others. R. 627–28. Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; complete a normal workday or week without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable rest periods; and respond appropriately to routine changes in the work setting. R. 631–32. Under the heading "MRFC—Additional Explanation," Consultant Feldman further explained her findings as follows:

> Cl. has no history of OP psych tx or hospitalizations. Psych CE was reviewed as no other psych MER available. Cl. attended psych CE on 11 / 17 / 17 and was dx with adjustment DO with mixed anxiety and depressed mood. Cl. reports depressed mood and anxiety due to her physical status and reports she is prescribed Cymbalta and Gabapentin. It does not state who prescribes her psych meds. Cl. reports frequent physical pain. Cl. does not report SI or psychosis.
>
> Psych CE MSE indicates cl. is Ox3, however her IQ is estimated to be in the low avg. range. Cl.'s long-term memory was estimated at below avg. while short-term

---

[7] The ALJ refers to this consultant as "Helen Feldman, Ph.D." R. 532. However, other than a medical specialty code of 38, R. 628 (reflecting the code "38" after her listed name), 633 (same); POMS DI 24501.004(B) (providing that "38" reflects a specialty of psychology), the credentials of this state agency consultant are not immediately apparent in the record.

memory was considered fair. Cl. could not sustain concentration to complete serial 3s or 7s.

ADLs indicate Cl. can care for personal and hygiene needs, can do laundry, prepare some meals, and shopping with her husband. Cl. can pay bills and also drives. Cl. endorses difficulty concentrating but states *she can follow instructions well*. Cl. reports she does not socialize as much as she had in the past and becomes anxious in response to changes or stressors.

*Cl. can follow simple instructions, can sustain CPP, relate and adapt in simple work-like settings.*

R. 633 (emphasis added).

Consultant Howard Mangel[8] reviewed Plaintiff's medical record upon reconsideration for the state agency on January 24, 2018. R. 637–48 (Exhibit 10A). Upon reconsideration, Consultant Mangel explained as follows:

Clmt is a 49 year old woman whose claim for SSD had been denied in 12/8/17.

For Recon, clmt filed statement re additional info re: Physical allegations but none re: mental allegations. No new Mental tx nor allegations.

Clmt is rx'ed Cymbalta 30 mg/day and Clonazepam 5 mg HS, as well as Gabapentin for pain. She is not in any psychotherapy or other mental health tx now or in the recent past. She has no hx of inpatient psychiatric admission.

After reviewing MER, including Psyc CE and PRT /MRFC, there are no new mental problems and no evidence of increased severity.

Previous Psych rating is affirmed.

R. 643.

---

[8] The ALJ refers to this consultant as "Howard Mangel, M.D.[,]" R. 532, but the credentials of this state agency consultant are not immediately apparent in the record.

## V.    DISCUSSION

### A.    Opinion Evidence Regarding Physical Impairments

Plaintiff challenges the ALJ's consideration of multiple medical opinions addressing her physical impairments, including, *inter alia*, Dr. Obuz's opinions dated March 2013, January 2014, and December 2017, as well as the opinions of the reviewing state agency medical consultants. *Plaintiff's Brief*, ECF No. 23, pp. 21–35; *Plaintiff's Reply Brief*, ECF No. 29, pp. 1–9. For the reasons that follow, Plaintiff's arguments are not well taken.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[9] "'[a] cardinal principle guiding disability

eligibility determinations is that the ALJ accord treating physicians' reports great weight,

especially when their opinions reflect expert judgment based on a continuing observation of the

patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F.

App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see*

*also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ

should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d

at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at

times even controlling weight") (citations omitted). However, "[a] treating source's opinion is

not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the]

case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20

C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d

Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and

inconsistent with the other evidence in the record."). "In choosing to reject the treating

physician's assessment, an ALJ may not make speculative inferences from medical reports and

may reject a treating physician's opinion outright only on the basis of contradictory medical

evidence and not due to his or her own credibility judgments, speculation or lay opinion."

*Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must

---

[9] As previously noted, Plaintiff's initial claim was filed on October 12, 2013, and, following remand from this Court, the Appeals Council consolidated this claim with Plaintiff's later-filed application and stated that the prior rules would apply to the consolidated claims. R. 703. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could not climb ladders, ropes, or scaffolds; she could perform the balance necessary to stand/walk on a frequent basis, but she could perform the balance necessary to negotiate narrow, slippery, or erratically moving surfaces on an occasional basis; she could occasionally stoop, kneel, crouch, and crawl; and she could have no exposure to unprotected heights or dangerous moving machinery. She could perform

uncomplicated tasks (defined as straightforward tasks, such as those typically learned in less than 30 days); and she could maintain concentration, persistence, and pace for 2-hour blocks of time throughout the workday consistent with regularly scheduled breaks and lunch.

R. 523. In reaching this determination, the ALJ, *inter alia*, assigned "little weight" to Dr. Obuz's

opinions, reasoning as follows:

> The undersigned gives little weight to the opinions of Vedat Obuz, M.D. (Exhibit 2F/1-3; 2F/7; 6F; 9F). In January 2014, Dr. Obuz opined that the claimant could lift 10-15 pounds occasionally, she could stand/walk less than 2 hours per day, she could sit less than 6 hours per day, and she was limited to an unidentified degree in pushing/pull and "other." In support of his opinion, which is hand-written, Dr. Obuz cited to a diagnosis of fibromyalgia and illegible physical exam findings. In March 2014 [sic], Dr. Obuz opined that the claimant could not lift over 20 pounds due to chronic back pain, neck pain, and rheumatoid arthritis. The undersigned notes that these opinions are inconsistent with one another despite being rendered only months apart. Additionally, the claimant has not been diagnosed with rheumatoid arthritis. Finally, in December 2017, Dr. Obuz opined that the claimant could sit for 0-2 hours and stand/walk for 1 hour total in an 8-hour workday; she needed to alternate positions every 20 minutes; she could occasionally lift less than 10 pounds and rarely lift 10 pounds; she could occasionally push/pull with the bilateral upper extremities; she could rarely perform any postural maneuver; she could occasionally reach and rarely handle, finger, and feel; she would require unscheduled breaks every 20 minutes; and she would be absent from work 3 or more days per month. These opinions are not entitled to great weight because they are overstated and they are inconsistent with the claimant's largely stable presentation on physical exams. They are also not entitled to a significant amount of weight because Dr. Obuz did not provide any objective support or explanation for his opinions other than to state the claimant's diagnoses and/or to state that the claimant had minimal response to medications. These opinions are also inconsistent with the claimant's reported daily activities (see, e.g., Exhibit 4E, 22E, 26E, 38F). Finally, these opinions are not supported by Dr. Obuz's own treatment notes, which are handwritten and somewhat illegible, but nonetheless generally do not document regular or ongoing objective deficits on exams (see, e.g., Exhibit 14F/14-20, 49-53, 56-59, 70, 72, 79; 23F; 55F).

R. 533–34.

Plaintiff challenges the ALJ's consideration of these opinions, arguing first that the ALJ's

"primary basis" for discounting both the March 2013 and January 2014 opinions was the ALJ's

mistaken belief that Dr. Obuz's March 2013 opinion was instead dated March 2014. *Plaintiff's*

*Brief*, ECF No. 23, pp. 24–26; *Plaintiff's Reply Brief*, ECF No. 29, pp. 3–7. More specifically, Plaintiff contends that, although the ALJ believed that these two opinions were inconsistent despite being rendered only months apart, the "less restrictive" March 2013 opinion was actually rendered nearly a year before the January 2014 source statement: "Thus, rather than supplying an apparently inconsistent set of opinions in rapid succession that suggested improved functioning despite indications of worsening, Dr. Obuz actually gave opinions separated by nearly a year that were entirely consistent with the documentation of a worsening condition." *Plaintiff's Brief*, ECF No. 23, p. 24; *see also Plaintiff's Reply Brief*, ECF No. 29, pp. 3–5. Plaintiff therefore contends that the ALJ relied on a "key error" when finding a purported inconsistency and discounting these opinions. *Plaintiff's Brief*, ECF No. 23, pp. 24–25.

The Court is not persuaded that this issue requires remand. It is true that the ALJ mistakenly stated that Dr. Obuz issued one of his opinions in March 2014 instead of March 2013. However, the underlying premise of the ALJ's consideration—that the two opinions were inconsistent despite having a temporal connection—remains valid. Specifically, the March 2013 opinion is dated March 14, 2013, R. 318, which is the same date that Dr. Obuz identified as the date on which he had most recently examined Plaintiff when rendering the January 2014 opinion, R. 312. Dr. Obuz therefore used the same physical examination—performed on March 14, 2013—as the basis for rendering two different opinions about Plaintiff's functional limitations, particularly her ability to lift and carry. *Compare* R. 312–13 *with* R. 318. Based on this record, the ALJ's mistaken reference to the March 2013 opinion as March 2014 is, at most, harmless. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding that "a remand is not required here because it would not affect the outcome of the case").

Plaintiff next suggests that the ALJ erred, when considering Dr.Obuz's March 2013 and January 2014 opinions, in stating that Plaintiff had not been diagnosed with rheumatoid arthritis. *Plaintiff's Brief*, ECF No. 23, pp. 25–26; *Plaintiff's Reply Brief*, ECF No. 29, pp. 5–6. Plaintiff contends that it "appears" that she had been treated for, *inter alia*, "suspected rheumatoid arthritis" from March 2012 through June 2015, and points to an order for an ANA test which, Plaintiff contends, doctors "generally" order for a suspected autoimmune disease like rheumatoid arthritis; Plaintiff concedes, however, that such testing is "not conclusive[.]" *Plaintiff's Brief*, ECF No. 23, p. 25. Plaintiff also contends that the March 2013 opinion "mentioned" rheumatoid arthritis and that her laboratory findings reflected an "elevated sedimentation rate." *Id.* Plaintiff goes on to argue that the ALJ erred in characterizing as "illegible" the "physical exam findings" in Dr. Obuz's January 2014 opinion; in Plaintiff's view, those findings were in fact legible. *Plaintiff's Brief*, ECF No. 23, pp. 25–26; *Plaintiff's Reply Brief*, ECF No. 29, p. 6.

Plaintiff has not shown that she is entitled to remand based on these arguments. As a preliminary matter, and as is apparent in Plaintiff's filings, the record does not in fact contain an actual diagnosis of rheumatoid arthritis. *See generally Plaintiff's Brief*, ECF No. 23; *Plaintiff's Reply Brief*, ECF No. 29. Although Plaintiff insists that Dr. Obuz's physical findings in the January 2014 opinion are legible, the Court disagrees and cannot find that the ALJ erred in characterizing that portion of the January 2014 opinion as illegible. *See* R. 312. In any event, however, Plaintiff concedes that the "primary basis" for discounting both the March 2013 and January 2014 opinions is that those opinions were inconsistent. *Plaintiff's Brief*, ECF No. 23, p. 25; *Plaintiff's Reply Brief*, ECF No. 29, p. 6. For the reasons explained above, substantial evidence supports the ALJ's finding in this regard.

Plaintiff next argues that substantial evidence does not support the ALJ's consideration of Dr. Obuz's December 2017 opinion. She argues that the ALJ erred in finding that this opinion was "overstated[,]" that the ALJ improperly found—and focused on—"largely stable" findings on physical examinations, that the ALJ found that Dr. Obuz did not provide any objective support or explanation for his 2017 opinion, that this opinion was inconsistent with Plaintiff's daily activities, and that Dr. Obuz's treatment notes did not support the December 2017 opinion. *Plaintiff's Brief*, ECF No. 23, pp. 26–31; *Plaintiff's Reply Brief*, ECF No. 29, pp. 6–9. For the reasons that follow, Plaintiff's arguments are not well taken.

The ALJ noted the different functional limitations contained in the December 2017 opinion—including, *inter alia*, that Plaintiff could rarely perform any postural maneuver; could occasionally reach but could rarely handle, finger and feel; would require unscheduled breaks every 20 minutes; and would be absent from work 3 or more days per month—but found that those limitations were "not entitled to great weight because they are overstated and they are inconsistent with the claimant's largely stable presentation on physical exams." R. 533. The ALJ's conclusion in this regard is supported by Plaintiff's physical examination findings, which included, *inter alia*, intact strength and sensation and full range of motion of the neck, shoulders, elbows, hands, wrists, hips, knees, ankles, feet, and thoracic and lumbar spines without noted swelling or tenderness in October 2013; without tenderness, synovitis, warmth, swelling, or decreased range of motion in the bilateral shoulders, elbows, wrists, hands, hips, knees, feet, or ankles in March 2015; intact range of motion and strength in the bilateral upper and lower extremities in March 2016; normal coordination, normal strength, normal sensation, and normal reflexes in May 2017; the finding that, in November 2017, Plaintiff could stand independently without balance deficits despite some tenderness, could balance on her heels and toes, could

21

squat and rise without assistance, walked normally without an assistive device, and had normal

or intact range of motion, sensation, and strength in her shoulders, elbows, forearms, wrists,

fingers, hips, knees, ankles, and feet; and the fact that, in December 2017, Plaintiff had full range

of motion without synovitis, swelling, warmth, or tenderness in the elbows, hands, wrists, hips,

knees, feet, and ankles despite some tenderness. R. 526–30. Moreover, and although the ALJ did

not detail each finding from the physical examinations spanning from December 2012 through

November 2021, the ALJ noted that Plaintiff's examination findings were generally stable. *See*

*id*. Based on this record, the Court is not persuaded that the ALJ erred in finding that Dr. Obuz

overstated Plaintiff's functional limitations in the December 2017 opinion. *Cf. Serrano v.*

*Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case,

the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness

of the medical opinions. . . . The ALJ was not required to repeat this information for the sake of

elaborating on her findings of persuasiveness.").

Plaintiff next argues that the ALJ erred in relying on Plaintiff's "stable" physical

examination findings, contending that stability is relative and that Plaintiff's physical

examination findings were not, in fact, stable. *Plaintiff's Brief*, ECF No. 23, pp. 26–27 (citing R.

528–30, 1566, 1570, 1914; *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000)); *Plaintiff's Reply*

*Brief*, ECF No. 29, pp. 7–8. In support, Plaintiff first argues that, in July 2017, she was unable to

sleep because of pain that also affected her daily activities; that she had worsening back pain in

August 2017; and that the September 2017 notation that her fibromyalgia was "stable" meant

that "it was still so intensely painful that she still could not sleep due to pain." *Plaintiff's Brief*,

ECF No. 23, p. 27; *Plaintiff's Reply Brief*, ECF No. 29, pp. 7–8. These arguments, which are

based on Plaintiff's own subjective complaints to medical providers, *Plaintiff's Brief*, ECF No.

23, p. 27 (citing R. 528–30, 1566, 1570, 1914), are not well taken. *See Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). Moreover, for the reasons discussed in more detail below, the ALJ properly discounted Plaintiff's subjective statements.

To the extent that Plaintiff argues that being "stable" is an "inherently relative concept" that did not account for Plaintiff's worsening condition, *Plaintiff's Brief*, ECF No. 23, pp. 26–27; *Plaintiff's Reply Brief*, ECF No. 29, pp. 7–8, the Court is not persuaded that this issue requires remand. As the Acting Commissioner explains, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 26, pp. 16–17, the ALJ did not simply rely on notations in the medical record that Plaintiff was "stable"; rather, in characterizing Plaintiff's physical examination findings as "stable," the ALJ clearly used that term to mean that such findings were generally unchanged. R. 525–31. That term is supported by the record, and the ALJ did not err in relying on that stability as one of the reasons for discounting Dr. Obuz's December 2017 opinion.

Plaintiff further argues that, contrary to the ALJ's finding, the objective evidence supports the December 2017 opinion. *Plaintiff's Brief*, ECF No. 23, pp. 28–31; *Plaintiff's Reply Brief*, ECF No. 29, p. 8. Although Plaintiff points to certain evidence in the record, *see id.*, the

ALJ accurately noted that the actual opinion does not itself "provide any objective support or explanation for his opinions other than to state the claimant's diagnoses and/or to state that the claimant had minimal response to medications." R. 533; *see also* R. 350–51 (reflecting the check-the-box and fill-in-the-blank format); *Galette v. Comm'r Soc. Sec.*, 708 F. App'x 88, 91 (3d Cir. 2017) ("As we have explained, forms that 'require[ ] the physician only to check boxes and briefly to fill in blanks . . . are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)). In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2012) 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].");  *Hatton*, 131 F. App'x at 880. The Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose her—or this Court's—different factual determination. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611 (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

Plaintiff also complains that the ALJ erred in her evaluation of the reviewing state agency medical consultants' opinions. *Plaintiff's Brief*, ECF No. 23, pp. 31–35; *Plaintiff's Reply Brief*, ECF No. 29, pp. 2–3. In crafting the physical RFC, the ALJ assigned "great weight" to the opinions of these state agency medical consultants, explaining as follows:

> As for the opinion evidence, the undersigned gives great weight to the prior administrative findings of state agency medical consultants Mohamed Abbassi, M.D. and Arthur Pirone, M.D. (Exhibit 8A, 10A). Although they neither treated nor examined the claimant, they did review the available evidence of record at the time of their respective November 2017 and February 2018 record reviews. Based upon their record reviews, they opined the claimant's degenerative disc disease and

fibromyalgia severe. They further assessed the claimant capable of performing work at the light exertional level with occasional performance of all postural maneuvers. In support of their opinions, they cited to the evidence of record and explained the reasoning for their assessments, which included consideration for the claimant's subjective complaints of pain, the claimant's presentation on physical examinations, and the claimant's reported daily activities (see Exhibit 8A/6, 8-9; 10A/6, 8-9). Of note, they specifically indicated that the residual functional capacity assessment was based upon the claimant's subjective reports of pain and general multifocal physical complaints (see Exhibit 8A/9). While additional treatment notes were admitted to the record after they performed their record reviews, most of these pertained to the period after the date last insured and/or did not reflect any meaningful change or deterioration in the claimant's presentation (see, e.g., Exhibit 43F). Overall, the undersigned finds that these assessments are consistent with and supported by the medical evidence of record in its entirety. However, in consideration for the claimant's reports of pain as well as for the opinions of the state agency medical consultants rendered in 2013 and 2014, the undersigned further limited the claimant to no climbing of ladders, ropes, or scaffolds and no exposure to potential hazards. Finally, the undersigned notes that the state agency medical consultants are familiar with program rules and evidentiary requirements, which lends their assessments additional persuasive value.

R. 531–32.

Plaintiff first contends that the ALJ improperly elevated the opinions of the non-examining state agency medical consultants over the opinions of Dr. Obuz, a treating physician. *Plaintiff's Brief*, ECF No. 23, pp. 31–32; *Plaintiff's Reply Brief*, ECF No. 29, pp. 2–3. In support, Plaintiff points to the Court's statement, during the oral argument that preceded the earlier remand of the matter, that it was a "stretch" to do so:

THE COURT: What do we do with the fact that these DDS medical reviewers, whose opinions were found to be significant, are elevated over the treating doctor, who is supported by other reports that were part of, I'm talking about Dr. Obuz?

[DEFENSE COUNSEL]: He is the primary care physician.

THE COURT: Yeah, the primary care. So in looking at, I guess, it was plaintiff's brief that talks about the Social Security law on the importance of the treating physician, the word longitudinal view comes in. And clearly Dr. Obuz has that over the snapshot from three years earlier that the DDS reviewers take. *It just seemed to me that the opinion takes a long step off first in elevating the DDS reviewers over the treating, giving the treating little weight. And that stretch, because I think it is*

25

> *a stretch, it seems to me would require either more discussion or more in the record to permit the ALJ to do that.* So that is what I'm taking from it. And I'm anxious to hear what you have to say about that.

R. 676–77 (emphasis added). However, as the Acting Commissioner points out, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 26, p. 21, the Court based this statement on the ALJ's failure to provide "more discussion or more in the record to permit the ALJ to do that." R. 676. On remand, the 2022 decision provided a more detailed discussion of the state agency opinions than did the 2016 decision. *Compare* R. 531–32 (reflecting the ALJ's discussion in the 2022 decision), *with* R. 25 (reflecting the ALJ's two-sentence statement in the 2016 decision). Plaintiff insists that "the ALJ overall did not provide better reasoning by providing more reasoning" because the ALJ "revealed erroneous thought processes" and "emphasized alleged factual circumstances that represent a major misunderstanding of the chronology of events." *Plaintiff's Reply Brief*, ECF No. 29, p. 3. However, the Court has already explained that the ALJ's mistaken reference to the March 2013 opinion as having been rendered in March 2014 was, at worst, harmless and that substantial evidence supports the ALJ's consideration of Dr. Obuz's opinions. Accordingly, this Court is not persuaded that the comment made in earlier proceedings undermines the ALJ's thorough consideration of the opinions of the state agency medical consultants in the 2022 decision.

Plaintiff next contends that the ALJ erred in her consideration of the opinions of Dr. Khurana and Dr. McLarnon, the state agency consultants who rendered opinions in 2013 and 2014, when she stated that "additional treatment notes do not reflect any meaningful change or deterioration in the claimant's presentation, as the claimant has presented in a largely stable manner despite her reports of pain." *Plaintiff's Brief*, ECF No. 23, pp. 32–33 (citing R. 532) (internal quotation marks omitted). According to Plaintiff, the record in January 2014 contained

only six medical pages, consisting of 53 pages, whereas the record now contains 35 different

medical exhibits, consisting of 860 additional pages, which reflect Plaintiff's "deterioration[.]"

*Id*. (citations omitted). This Court is not persuaded that this issue requires remand.

       An ALJ may rely on a reviewing state agency physician's report and opinion even where

there is a lapse of time between the rendering of that report and opinion and the ALJ's decision.

*Cf. Chandler*, 667 F.3d at 361 ("The Social Security regulations impose no limit on how much

time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional

medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency

medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any

impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations

omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required

to consider the reports of State agency medical consultants; however, there is no requirement that

an ALJ must always receive an updated report from the State medical experts whenever new

medical evidence is available."). For the reasons already noted in the Court's consideration of the

medical record above, Plaintiff has not shown that the ALJ erred in assigning great weight to the

opinions of Drs. Khurana and McLarnon.

       Plaintiff also challenges the ALJ's consideration of the opinions of Drs. Abbassi and

Pirone, state agency medical consultants who reviewed the record in 2017 and 2018, contending

that these consultants did not consider—and were apparently unaware of—Dr. Obuz's opinions,

which "alone undermines the ALJ's reliance on these opinions." *Plaintiff's Brief*, ECF No. 23,

pp. 33–34. However, this Court has already explained that the ALJ did not err in discounting Dr.

Obuz's opinions. Accordingly, any error in the failure of Dr. Abbassi or Dr. Pirone to consider

Dr. Obuz's opinions is, at most, harmless error that does not require remand.

In short, for all these reasons, the Court concludes that the ALJ's consideration of the opinions of Dr. Obuz and of the state agency medical consultants enjoys substantial support in the record, as does the ALJ's physical RFC determination.

**B.    Mental RFC and Opinion Evidence**

Plaintiff also challenges the ALJ's mental RFC as inconsistent with the ALJ's consideration of the state agency psychological consultants. *Plaintiff's Brief*, ECF No. 23, pp. 35–39; *Plaintiff's Reply Brief*, ECF No. 29, pp. 9–11. For the following reasons, this Court disagrees.

As previously noted, the ALJ's RFC limited Plaintiff to, *inter alia*, "uncomplicated tasks (defined as straightforward tasks, such as those typically learned in less than 30 days); and she could maintain concentration, persistence, and pace for 2-hour blocks of time throughout the workday consistent with regularly scheduled breaks and lunch." R. 523. In crafting this portion of the RFC, the ALJ assigned "great weight" to the opinions of the reviewing state agency psychological consultants, Consultants Feldman and Mangel, explaining as follows:

> The undersigned gives great weight to the prior administrative findings of state agency psychological consultants Helen Feldman, Ph.D. and Howard Mangel, M.D. (Exhibit 8A, 10A). Although they neither treated nor examined the claimant, they did review the available evidence of record at the time of their respective December 2017 and January 2018 record reviews. Based on their record reviews, they found the claimant's depressive disorder severe, and they assessed moderate limitations in all paragraph B criteria except for social interaction, which they found to be mild. They further found the claimant could follow simple instructions; sustain concentration, persistence, and pace; and relate and adapt in simple work-like settings. While additional treatment notes were admitted to the record after they performed their reviews, these additional treatment notes do not reflect any meaningful change or deterioration in the claimant's presentation (see, e.g., Exhibit 43F). They both cited to the evidence of record and explained the reasoning for their assessments, which included consideration for the claimant's presentation during the psychological consultative exam, her otherwise minimal course of treatment for mental health symptoms, and her reported daily activities (see Exhibit 8A/11-12). Overall, the undersigned finds these assessments are generally consistent with and supported by the medical evidence. However, the undersigned

did not find support for a moderate limitation in adapting or managing oneself. As noted above, treating providers regularly observed the claimant to present in a well-groomed manner on exams. There is also no evidence that she was unable to attend appointments alone or as scheduled. The claimant also reported caring for her disabled daughter on a daily basis as through her date last insured (see Exhibit 4E, 22E, 26E). Finally, the claimant was not observed to have difficulty controlling her emotions during her numerous follow up visits with treating providers. Thus, the undersigned did not adopt the limitation to simple worklike settings. Nonetheless, the undersigned notes that the vocational expert testified that this additional limitation would not significantly erode the light exertional base. The undersigned otherwise included limitations consistent with these opinions but phrased these limitations in more vocationally relevant terms. Finally, the undersigned notes that the state agency psychological consultants are familiar with program rules and evidentiary requirements, which lends their assessments additional persuasive value.

R. 532–33.

Plaintiff first complains that the ALJ, despite assigning "great weight" to these opinions, failed to incorporate—without explanation—Consultant Feldman's opined moderate limitation in Plaintiff's ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; complete a normal workday or week without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable rest periods; and respond appropriately to routine changes in the work setting. *Plaintiff's Brief*, ECF No. 23, pp. 36–39 (citing, *inter alia* R. 532–33, 631–32; *Annette S. v. Kijakazi*, No. 1:21-CV-2153, 2022 WL 2980982, at *7 (D.N.J. July 28, 2022)); *Plaintiff's Reply Brief*, ECF No. 29, pp. 9–11. However, as the Acting Commissioner explains, *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 26, pp. 23–25, these limitations appeared in Section I of the Disability Determination Explanation form, which groups 20 mental functions into categories that are rated as not

significantly limited, moderately limited, markedly limited, no evidence of limitation in this

category, or not ratable on available evidence. R. 631–32; *see also* POMS DI 24510.060(B)(2),

https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060. This section of the Program Operations

Manual System ("POMS") further explains that "**Section I is merely a worksheet** to aid in

deciding the presence and degree of functional limitations and the adequacy of documentation

and **does not constitute the RFC.** *Id.* (emphasis in the original). The United States Court of

Appeals for the Third Circuit has confirmed this interpretation of the POMS. *Smith v. Comm'r of

Soc. Sec.*, 631 F.3d 632, 636–37 (3d Cir. 2010) (citing POMS DI 24510.060 for this proposition);

*see also Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 360 (3d Cir. 2015) ("But we have said

that ALJs are not required to give any weight to these fill-in-the-blank and checklist portions of

RFC assessments and that their focus instead should be on the narrative portions of the

assessments where the medical experts expound on their opinions.") (citations omitted).

Moreover, in finding moderate limitations in the areas of concentration and persistence and

adaptation, Consultant Feldman expressly referenced her narrative discussion under the heading,

"MRFC – Additional Explanation." R. 632–33 (referring to "see below" when asked to explain

in narrative form the limitations in concentration and persistence and in adaptation). In that

narrative explanation, Consultant Feldman expressly found that Plaintiff could, *inter alia*,

"follow simple instructions, can sustain CPP, relate and adapt in simple work-like settings." R.

633. Stated differently, Consultant Feldman detailed and explained in the narrative discussion the

parameters of Plaintiff's mental functional limitations. *See id.*[10] The ALJ accommodated this

---

[10] Accordingly, the MRFC narrative explanation regarding Plaintiff's moderate mental
limitations and abilities in the present case is distinguishable from *Annette S*, which expressly
incorporated by reference the limitations identified in Section I. *See Annette S.*, 2022 WL
2980982, at *7–8 (explaining in the narrative that the claimant, *inter alia*, was "[c]apable of

limitation by limiting Plaintiff's RFC to the performance of "uncomplicated tasks (defined as straightforward tasks, such as those typically learned in less than 30 days); and she could maintain concentration, persistence, and pace for 2-hour blocks of time throughout the workday consistent with regularly scheduled breaks and lunch." R. 523. The ALJ's limitation to performing uncomplicated tasks that are typically learned in less than 30 days corresponds with the state agency's definition of unskilled work. *See* 20 C.F.R. § 404.1568(a) (defining unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time" and that "a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed"); *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 210 (3d Cir. 2019) ("A limitation to 'simple tasks' is fundamentally the same as a limitation 'to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]'") (citations omitted); *Menkes v. Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration.").

To the extent that Plaintiff insists that the ALJ should have included in the RFC a need for additional breaks, and erred by failing to explain why Plaintiff could concentrate and persist in two-hour blocks throughout the workday without additional breaks, those arguments are not well taken. *Plaintiff's Brief*, ECF No. 26, pp. 37–38; *Plaintiff's Reply Brief*, ECF No. 29, pp. 9–11. As detailed above, Consultant Feldman expressly found, and Consultant Pirone affirmed, that

---

occupational functioning within limits defined above"). Accordingly, that case is inapposite and Plaintiff's reliance on that case is unavailing.

Plaintiff could "sustain CPP [concentration, persistence or maintain pace][.]" R. 633, 643. In adopting a mental RFC for uncomplicated (simple) tasks, the ALJ expressly relied on, among other things, Plaintiff's presentation at examinations, her minimal treatment for mental health symptoms, her daily activities such as caring for her disabled daughter through the date last insured, engaging in light household cleaning, independence with bathing and dressing, preparing meals, doing laundry twice per week for 2 hours at a time, going outside daily, independently operating a motor vehicle, shopping in stores once per week with her husband, independence in managing money, watching television 45 minutes daily, reading 30 minutes daily, attending church for 90 minutes per week, following instructions well, and getting along with others well. R. 523, 525, 533. On this record, the Court cannot conclude that the ALJ erred in considering the state agency psychological consultants' opinions or in crafting the mental RFC.[11] *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 211 (3d Cir. 2019) (stating that "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace'" and explaining that this conclusion "flows directly from our decision in *Ramirez* [*v. Barnhart*, 372 F.3d 546, 554 (3rd Cir. 2004)]"); *Long v. Kijakazi*, No. 20-CV-6336, 2022 WL 1204131, at *14 (E.D. Pa. Apr. 22, 2022) (concluding that the ALJ provided a valid explanation for finding that the claimant is

---

[11] The ALJ did not adopt every aspect of the state agency consultants' limitations and offered an adequate explanation for doing so. R. 533 ("However, the undersigned did not find support for a moderate limitation in adapting or managing oneself. As noted above, treating providers regularly observed the claimant to present in a well-groomed manner on exams. There is also no evidence that she was unable to attend appointments alone or as scheduled. The claimant also reported caring for her disabled daughter on a daily basis as through her date last insured (see Exhibit 4E, 22E, 26E). Finally, the claimant was not observed to have difficulty controlling her emotions during her numerous follow up visits with treating providers. Thus, the undersigned did not adopt the limitation to simple worklike settings."). In any event, the ALJ went on to note that the vocational expert testified that this additional limitation would not significantly erode the light exertional base. *Id*.

capable of performing simple tasks where the ALJ "repeatedly pointed out Plaintiff's 'normal' mental status examinations[,]" "emphasized Plaintiff's ADLs, which included such tasks as childcare for three children (including a one-year-old), house cleaning, woodworking, laundry and shopping[,]" and the claimant's "progress notes consistently showed full orientation, alertness, logical thought processes, fair or normal insight and judgment, and intact reality testing, decision making, attention, concentration, and memory").

For these reasons, substantial evidence supports the ALJ's consideration of the opinions of the reviewing state agency psychological consultants and the mental RFC.

### C.    Subjective Statements

Plaintiff also challenges the ALJ's consideration of her subjective complaints. *Plaintiff's Brief*, ECF No. 23, pp. 39–46; *Plaintiff's Reply Brief*, ECF No. 29, pp. 11–12. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit

33

an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or

symptom and the extent to which it affects the ability to work] obviously requires the ALJ to

determine the extent to which a claimant is accurately stating the degree of pain or the extent to

which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this

evaluation, an ALJ must consider the objective medical evidence as well as other evidence

relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following

factors to consider: daily activities; the location, duration, frequency, and intensity of pain or

other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

effects of any medication you take or have taken to alleviate pain or other symptoms; treatment,

other than medication, currently received or have received for relief of pain or other symptoms;

any measures currently used or have used to relieve pain or other symptoms; and other factors

concerning your functional limitations and restrictions due to pain or other symptoms). Finally,

an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v.

Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported

by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. §

416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A]

reviewing court typically defers to an ALJ's credibility determination so long as there is a

sufficient basis for the ALJ's decision to discredit a witness.").

  Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered

Plaintiff's subjective complaints. R. 524–25. The ALJ found that Plaintiff's medically

determinable impairments could reasonably be expected to cause symptoms, but that her

statements "concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 24. The ALJ explained why the record evidence did not support Plaintiff's subjective statements, expressly noting Plaintiff's fibromyalgia-related symptoms, as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the claimant's presentation on objective examinations has largely been stable despite reports of worsening chronic pain. While she did present with decreased range of motion [of the] cervical and lumbar spines, tenderness in the paracervical and paralumbar areas, and positive fibromyalgia tender points, she nonetheless regularly presented as alert, fully oriented, and in no acute distress, and without deficits in strength, sensation, reflexes, or gait. While she often reported bilateral shoulder pain, worse on the right, she did not present with range of motion, strength, or sensation deficits in either shoulder on exams, and imaging of her right shoulder was normal. Further, despite her reported high levels of pain, which she often rated as 8-9/10, she did not require regular emergency treatment for exacerbations of her pain. *While the claimant's fibromyalgia symptoms, including pain, fatigue, and brain fog, along with the mild degenerative changes seen in her cervical and lumbar spines, do support finding that she was limited in functioning, her clinical presentation and course of treatment does not support finding her more limited than outlined above. This range of light exertional work is further supported by the claimant's reported activities.* For example, in early 2017, the claimant reported that she had recently traveled to Ecuador and she reported feeling better on this trip, and she did not report any physical or mental health limitations associated with traveling (Exhibit 40F/1). Additionally, a function reported filled out by the claimant in August 2017, just prior to her date last insured, reflects that the claimant's activities included preparing her disabled daughter for the day by bathing and dressing her; engaging in light household cleaning; performing home exercises with the help of her husband; independence with bathing and general independence with dressing; preparing meals weekly; doing laundry twice per week for 2 hours at a time; going outside daily by walking, driving, or riding in a vehicle; independently operating a motor vehicle; shopping in stores once per week with her husband; independence with managing money; watching television 45 minutes daily; reading 30 minutes daily; attending church 90 minutes per week; following instructions well; and getting along with others well (Exhibit 22E). The claimant reported engaging in similar activities in a function report dated January 31, 2018, just after her date last insured (Exhibit 26E).

R. 524–25 (emphasis added); *see also* R. 534 (explaining that the RFC "supported by the objective medical evidence of record, the claimant's subjective complaints, the fact that no

treating or examining medical or psychological professional persuasively opined limitations beyond the residual functional capacity, and the impact of the claimant's impairments upon her ability to sustain more than minimal activity"). In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286; *Benoit v. Saul*, No. 1:18-CV-02224, 2019 WL 8301636, at *6 (M.D. Pa. Dec. 6, 2019), *report and recommendation adopted*, No. 1:18-CV-2224, 2020 WL 1445857 (M.D. Pa. Mar. 25, 2020) (finding that substantial evidence supported the ALJ's decision that the claimant, who suffered from, *inter alia*, fibromyalgia, was not disabled where, among other things, her "allegations of pain []were out of proportion to fibromyalgia according to Benoit's rheumatologist"); *Decker v. Colvin*, No. 1:14-CV-01081, 2015 WL 3838234, at *11–13 (M.D. Pa. June 22, 2015) (finding, where the claimant had, *inter alia*, fibromyalgia, that "the ALJ sufficiently explained her reasons for finding Decker's subjective complaints overstated" and that they "were not fully consistent longitudinally, particularly with respect to her abilities and activities of daily living and the objective medical evidence which showed that her symptoms improved with medication; her pain symptoms were not consistently reported as debilitating; and she had a normal gait and her extremities were within normal limits"); *cf. Orbin v. Barnhart*, 38 F. App'x 822, 822–23 (3d Cir. 2002) ("[T]he relevant consideration is not the fact that Orbin has been diagnosed, but rather to what extent her illness causes functional limitations. . . . . Orbin relies on the diagnosis of fibromyalgia to assert that she is totally incapacitated, but doctors have found absolutely no medical evidence to support this assertion.").

However, in challenging the ALJ's consideration in this regard, Plaintiff argues that the ALJ wrongly relied on purportedly stable findings and that the ALJ failed to properly consider

Plaintiff's fibromyalgia, a condition that waxes and wanes. *Plaintiff's Brief*, ECF No. 23, pp. 40–43; *Plaintiff's Reply Brief*, ECF No. 29, pp. 11–12. The Court is not persuaded that this issue requires remand.

As to Plaintiff's challenges based on her fibromyalgia, the Court notes that this disease "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p. Under this Ruling, a claimant can establish fibromyalgia as a severe, medically determinable impairment by presenting "appropriate medical evidence" that satisfies one of the two sets of criteria for the diagnosis, based on criteria established by the American College of Rheumatology ("ACR"): the 1990 ACR Criteria for the Classification of Fibromyalgia (the "1990 Criteria"),[12] or the 2010 ACR Preliminary Diagnostic Criteria (the "2010 Criteria").[13] *Id.*;

---

[12] Under the 1990 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain in all quadrants of the body that has persisted for at least three months; (2) at least eleven positive tender points bilaterally both above and below the waist on physical examination; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded. Therefore, it is common in cases involving [fibromyalgia] to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs." *Id.*

[13] Under the 2010 Criteria, an ALJ may find that a person suffers from fibromyalgia if that person has all three of the following: (1) a history of widespread pain; (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring condition were excluded[.]" *Id.* Symptoms or signs include "somatic symptoms," including the following: muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. *Id.* Some co-occurring conditions may include irritable bowel syndrome, depression, anxiety disorder, chronic

*see also Foley v. Barnhart*, 432 F. Supp.2d 465, 475 (M.D. Pa. 2005) ("These tender points are called "trigger points." . . . . All points may not be painful at all times in every person. . . . The pain may vary in intensity according to the time of day, weather, activity level, stress, and sleep patterns.") (citations omitted).

As set forth above, the ALJ expressly considered Plaintiff's fibromyalgia symptoms when evaluating her subjective complaints. R. 524. Notably, the ALJ did not completely discount Plaintiff's subjective complaints; instead, the ALJ explained how the RFC took into consideration Plaintiff's complaints of pain. R. 524–25, 534; *see also Longboat v. Berryhill*, No. CV 17-146-E, 2018 WL 4157067, at *1 (W.D. Pa. Aug. 30, 2018) (finding, *inter alia*, that the "ALJ did not entirely discount Plaintiff's allegations of pain in his decision; rather, he appropriately found that Plaintiff indeed suffered from moderate pain, but still retained the capacity for light work with additional restrictions"); *Morel v. Colvin*, No. 14-2934, 2016 WL 1270758, at *6 (D.N.J. Apr. 1, 2016) ("The claimant need not be pain-free to be found 'not disabled.'"). Moreover, and as the Court has already explained, the ALJ properly considered the objective evidence relating to Plaintiff's degenerative disc disease of the cervical and lumbar spines as well as fibromyalgia. *See Trauterman v. Comm'r of Soc. Sec.*, 296 F. App'x 218, 220 (3d Cir. 2008) (explaining that the "fatal flaw" in the claimant's argument that the ALJ failed to properly consider the claimant's fibromyalgia is that the claimant was also diagnosed with other physical impairments (cervical spine disc herniation, lumbar spine degenerative joint disease, and carpal tunnel syndrome) and that, "[i]n light of these diagnoses, it was quite appropriate for the ALJ to consider the objective medical evidence of record").

---

fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome. *Id*.

Plaintiff goes on to challenge the ALJ's consideration of Plaintiff's activities, arguing that the ALJ failed to consider Plaintiff's "many qualifying statements" regarding those activities. *Plaintiff's Brief*, ECF No. 23, pp. 43–46. The ALJ expressly considered Plaintiff's testimony that, *inter alia*, on a "good day, she wakes up, takes a shower, and watches a little television"; her testimony that, since stopping work in 2013, she passes the time by reading books and by watching television, although she later testified that she has difficulty concentrating more than 15 minutes at a time and has problems with memory; and evidence that, although she helps her disabled daughter get dressed and packs her lunch on good days, her daughter has had a caretaker from 8 am until 4 pm since 2017. R. 524. In addition, as previously noted, the ALJ observed that, prior to the date on which Plaintiff was last insured, she bathed and dressed her disabled daughter, she engaged in "light" household cleaning, her husband helped her perform home exercises, she watched television for 45 minutes and read for 30 minutes per day, and attended church for 90 minutes per week. R. 524–25. Plaintiff complains that the ALJ improperly considered Plaintiff's trip to Ecuador; however, this was but one activity that the ALJ considered when assessing Plaintiff's subjective complaints. *Id*.

Finally, to the extent that Plaintiff refers to other evidence that she believes supports her subjective statements, this Court has already explained that it must affirm the ALJ's decision where, as here, it is supported by substantial evidence even if Plaintiff points to evidence that supports the opposite conclusion. *See Johnson*, 497 F. App'x at 201.

For all these reasons, the Court concludes that the ALJ sufficiently explained her reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306

F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id*.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  December 30, 2024                    *s/Norah McCann King*
                                            NORAH McCANN KING
                                            UNITED STATES MAGISTRATE JUDGE